IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| SHANE M. MORRISON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:05-3394-SB-BM |
| | ) | |
| v. | ) | |
| | ) | |
| TOM FOX, Director Horry County | ) | **REPORT AND RECOMMENDATION** |
| Detention Center; SUE SAFFORE, | ) | |
| Captain Horry County Detention | ) | |
| Center, | ) | |
| | ) | |
| Defendants. | **)** | |
| _____ | **)** | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was an inmate at the Horry County Detention Center, alleges violations of his constitutional rights by the two named Defendants, Tom Fox (Director of the Detention Center) and Sue Saffore (a captain at the Detention Center).

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 24, 2007. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on January 25, 2007, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the motion on February

1



6, 2007. Defendants' motion is now before the Court for disposition.[1]

### **Background and Evidence**

Plaintiff alleges in his unverified amended Complaint[2] that he was subjected to unsanitary and inhuman conditions while housed at the Horry County Detention Center, and that he was subjected to unlawful overcrowding in his cell. In his original verified Complaint, Plaintiff alleged that three men were placed in one man cells, with eight to ten men being placed in four man cells, requiring people to sleep on dirty floors near toilets. Plaintiff also complains that these conditions require inmates to use the bathroom in front of other inmates. Plaintiff further alleged in his initial verified Complaint that the showers do not work properly; that there are only two showers for one hundred and forty inmates since four were not working; that the showers contained rusted out grates, sprinklers, and bars; that he has gotten a staph infection since he has been incarcerated at the jail; and that when it rains or is wet outside the water leaks through the walls.

In the remainder of his unverified amended Complaint, Plaintiff complains that he was "assaulted due to this overcrowding" and that he was then charged for his medical care, which

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]Plaintiff's initial complaint in this matter was verified; however, his amended Complaint (Court Document No. 10) is not verified. In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff's amended complaint was filed at the direction of the Court; therefore, in light of his pro se status, to the extent any of the allegations set forth in the amended Complaint mirror allegations that were originally set forth in Plaintiff's initial verified Complaint, the undersigned has considered those factual allegations in issuing a recommendation in this case. Any allegations in the amended Complaint that were not set forth in the initial verified Complaint, however, have not been considered as evidence for purposes of consideration of the Defendants' summary judgment motion.



is "ruining [his] credit." Plaintiff also complains that there are only two guards watching over one hundred and thirty inmates, which is not safe, and that he is always suffering from staph infections or other diseases because it is so overcrowded. Plaintiff further complains in his amended Complaint that inmates receive only paper towels and water to clean with, with no disinfectant. As for the two named Defendants, Plaintiff states only that "I feel that the Director of the facility and also the Captain are violating my rights."

Plaintiff's amended Complaint requests no specific relief, although in his initial verified Complaint Plaintiff requests certain declaratory and/or injunctive relief as well as monetary damages. Plaintiff has attached copies of bills for medical services to his amended Complaint.

In support of summary judgment in the case, the Defendant Susan Saffore has submitted an affidavit wherein she attests that she is employed at the Horry County Detention Center as a captain in charge of classification. Saffore attests that she has no personal recollection of the Plaintiff obtaining a staph infection or getting into a fight during his incarceration. Saffore further attests that on or about September 24, 2005, classification received a medical re-classification form signed by Nurse Sandra Robertson, instructing classification to reclassify the Plaintiff into a medical cell in the B3 Housing Unit. Saffore attests that this reclassification was completed on September 25, 2005 by moving Plaintiff into Cell 132 in the B3 Housing Unit. See generally Saffore Affidavit.

Defendants have also submitted an affidavit from Deborah Hipp, who attests she is a nurse practitioner employed at the Horry County Detention Center. Hipp attests that, based on her review of Plaintiff's medical records and her personal examinations of him since his incarceration, Plaintiff first arrived at the Detention Center on or around July 24, 2005, at which time he received an inmate medical screen. No staph infection or other serious medical problem was noted.



3

Thereafter, on September 17, 2005, Plaintiff filled out a medical request form stating that he had been bitten by a spider, and he was examined by Nurse Amy Stack on September 18, 2005. Stack noted that Plaintiff had a "small area of red raised - no drainage noted", and he was given betadine pads. Plaintiff subsequently completed a second medical request form complaining of additional spider bites, following which he received an aerobic bacterial culture on September 23, 2005 at Hipp's request.

Hipp attests that Plaintiff was then seen by Nurse Robertson on September 24, 2005 who noticed "multiple reddened raised areas" on Plaintiff's right leg. Robertson also examined a right lateral thigh abscess, and Hipp was notified that a large amount of drainage was present. Hipp attests that she immediately ordered that Plaintiff be reclassified to B3, the medical cell area, away from the general population of inmates. See also, Nurse's note dated 9/24/05 (Attached to Hipp Affidavit).

Hipp attests that she saw the Plaintiff in the medical clinic on September 24, 2005 and ordered daily wound care with right leg documentation, as well as certain prescription medications. Plaintiff attests that she also directed that Plaintiff be given a clean uniform and towel each day for five days, and that a culture be obtained. Plaintiff was advised of the need for good hand washing and to avoid touching areas, and that he was to follow-up with medical. Hipp attests that Plaintiff also received new mats, blankets, mat covers, uniforms, and a towel. See also Medical Re-Classification Check List (Attached to Hipp Affidavit).

Plaintiff was seen in the medical clinic by Nurse R. Hassan on September 25, 2005, who noted a large open wound of the right posterior thigh and several other small open wounds on Plaintiff's interior right thigh with drainage from all wounds. Hassan cleaned and dried the area and

4



covered it with gauze pads, with Plaintiff then being placed on sick call with monitoring due to the swelling noted. Hipp attests that she then saw the Plaintiff on September 26, 2005, noted an abscess on his leg, and directed that Plaintiff was to remain in the medical cell with medication being prescribed. Hipp attests that Plaintiff has been treated properly for his staph infection, has been seen by medical personnel "quite often" and has been attended to by staff members, and that he received proper medication and treatment throughout the duration of his incarceration.

       Hipp also attests that Plaintiff was involved in a fight with fellow inmate Quinton Ferguson on January 20, 2006, following which he was seen in medical with a laceration over his right eye. Hipp attests that Plaintiff was transported immediately to the Conway Medical Center, where his laceration was cleaned and repaired with a topical adhesive by Dr. Christo Courban. Hipp attests that Plaintiff also had a CT scan performed to his head and facial area as well as his spine, all of which were negative. No fractures was noted and Plaintiff was discharged and returned to the Detention Center. Hipp attests that the Detention Center did not pay Plaintiff's medical bill for his emergency room visit because the Detention Center is not required to do so for pretrial detainees, who are responsible for their own medical treatment. However, Plaintiff did receive medical treatment for his injury, and has also continued to be seen for treatment concerning his staph infection.

       Hipp attests that it is clear from both her personal treatment of the Plaintiff as well as her review of Plaintiff's medical records that his staph infection arose either from spider bites or other common conditions within the Detention Center while he was housed in the A-Pod, general population. Hipp attests that Plaintiff's staph infection did not result from any deliberate indifference to his medical condition, that it is relatively common for inmates to have staph

5



infections, as it is in hospitals and other areas of large populations of people inside a closed living space, and that when Plaintiff was diagnosed with a staph infection he was immediately reclassified into a special medical pod for living and received the appropriate medical treatment and attention. See generally, Hipp Affidavit, with Attached Exhibits.

In opposition to the Defendants' motion, Plaintiff has submitted a brief in which he continues to complain about the unsanitary and overcrowded conditions at the Detention Center. Plaintiff has also attached a copy of a "Pod Roster" of July 17, 2006, showing three inmates being assigned to each cell, which Plaintiff alleges are all one man cells. Plaintiff has also submitted a copy of an incident/infraction report from January 10, 2006, which discusses the altercation between him and another inmate. This report also indicates that no officer saw what happened, but that Plaintiff was bleeding from a gash above his eye and was transported to the hospital for stitches. This report also indicates that the other inmate involved in the altercation was charged with assaulting the Plaintiff. See Exhibit (Incident/Infraction Report).

Plaintiff has also submitted an affidavit from Inmate Dupree Evans, wherein Evans attests that three inmates are being placed in one man cells, that they are often on "long lock-down" which restricts inmates' ability to exercise, and that there are only one or two working showers in his pod out of six showers. Evans attests that Plaintiff was housed in medically segregated cells after his "ailment" was cured, but that when others were placed into his cell with him, it caused him to be reinfected. See generally, Evans Affidavit. A second affidavit, from Inmate Randi Gaunt, attests to similar conditions. Gaunt also attests that Plaintiff was attacked and assaulted by inmate Quinton Ferguson. See generally, Gaunt Affidavit. Plaintiff has also submitted a list of witnesses he (presumably) intends to call to trial of this case, together with a copy of the Detention Center's



medical reclassification form dated September 24, 2005, where he was reclassified to B3-Medical.

## **Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## **I.**

Defendants argue, inter alia, that even if Plaintiff has otherwise presented a cognizable claim, his entire case should nevertheless be dismissed because he failed to exhaust his administrative remedies with regard to his claims prior to proceeding with this lawsuit. Exhaustion of available administrative remedies is a requirement for proceeding with a § 1983 lawsuit in federal court. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516 (2002); Palay v. United States, 349 F.3d 418, 425 (7th Cir. 2003) [as applied to pretrial detainees].



Plaintiff asserts in his verified Complaint that he attempted to exhaust the jail administrative grievance process, but that he never received any response. Defendants argue that Plaintiff never allowed the grievance process to properly conclude; however, Plaintiff states in his initial verified Complaint that he filed his first grievance on September 1, 2005, but that as of the date of his Complaint (November 20, 2005) no response had ever been received. Defendants have put in no affidavits or any other evidence with respect to Plaintiff's grievances, or the status of those grievances. Hence, at least for purposes of summary judgment, there would appear to be a material issue of fact as to whether Plaintiff properly attempted to exhaust whatever administrative procedures existed at the Detention Center prior to filing this lawsuit. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [following the lead of the...other circuits that have considered the issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]; *cf.* Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) [holding that defendants failed to prove non-exhaustion where they presented no evidence to refute plaintiff's contention that he could not pursue grievance further after warden did not respond to his grievance]; Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pleaded and proven by the defendant]. Therefore, the undersigned has addressed Plaintiff's claims on the merits..

**II.**

Plaintiff has brought this case pursuant to § 1983, which is the procedural mechanism



through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). As employees of the Detention Center during the relevant time period, the named Defendants are both subject to suit under § 1983 in their individual capacities. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977).

However, section 1983 does not impose liability for violations of duties of care arising under a state's tort law. DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 200-203 (1989). Therefore, in order to avoid summary judgment on his claims, Plaintiff is required to submit evidence to the Court sufficient to give rise to a genuine issue of fact as to whether any of his constitutional rights have been violated. Further, that evidence must also show that the named Defendants are the ones responsible for any violations of his constitutional rights. Gomez v. Toledo, 446 U.S. 635, 640 (1980) [in order to state a cause of action under § 1983, a plaintiff must allege that 1) the defendant deprived him or her of a federal right, and 2) did so under color of state law]. Specifically with respect to Plaintiff's medical claims, the undersigned finds and concludes after review of the arguments and evidence presented that Plaintiff has failed to present evidence sufficient to give rise to a genuine issue of fact as to whether his constitutional rights were violated by any Defendant.

In order to proceed with this claim, the evidence must show that the named Defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285

9



(4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).³ Further, in deciding this issue, it is important to remember that whether or not Plaintiff was provided with the care he *desired* is immaterial. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) [the Constitution "does not guarantee to a prisoner the treatment of his choice."]; see also Brown v. Thompson, 868 F.Supp. 326, 329-330, n. 2 (S.D.Ga. 1994). Here, the Defendants have submitted an affidavit from a medical professional detailing the medical care and treatment Plaintiff has received since his arrival at the Detention Center, including how he was removed from the general population and kept in the medical clinic when required, detailing his treatment and the fact that he has been prescribed medications for his complaints, and that on the occasion when he was assaulted by another inmate he was immediately transported to the hospital for medical care.⁴ Defendants have also provided exhibits setting forth Plaintiff's medical care, and Plaintiff has himself submitted exhibits to the Court confirming his transfer to the medical clinic in September 2005, as well as that he received hospital medical care following his altercation with a fellow inmate.

Hence, it is not contested that Plaintiff has and is receiving medical care for his complaints; rather, Plaintiff is simply dissatisfied with the medical care he is receiving (or, with

---

³While Plaintiff was only a pretrial detainee during the time period at issue, the deliberate indifference standard applicable to convicted prisoners still applies. See Hill v. Nicodemus, 979 F.2d 987, 991-992 (4th Cir. 1992).

⁴Since Plaintiff was provided medical care on that occasion, his dispute with the Detention Center over who should pay for that care does not in and of itself raise a constitutional claim, since he was not denied any care. Holmes v. Howard, No. 06-1041, 2007 WL 505360 at * 7 (W.D.Ark. Feb. 14, 2007) ["Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so."] (citing Roberson v. Bradshaw, 198 F.3d 645 (8th Cir. 1999)); see e.g. Reynolds v. Wagner, 128 F.3d 166, 173-174 (3rd Cir. 1997) [deliberate indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society]; see also Jensen v. Klecker, 648 F.2d 1179, 1183 (8th Cir. 1981) [no basis for due process claim where deductions from prisoner accounts were assessments for value received].

10



regard to the incident where he was sent to the hospital, who has to pay for that care). However, while the provision of medical care is not discretionary, the type and amount of medical treatment to be provided is discretionary; See Brown, 868 F.Supp. at 329-330, n. 2; and mere disagreement between the Plaintiff and medical personnel about the seriousness of his medical complaints or the course of his treatment does not constitute deliberate indifference on the part of the medical personnel. Lamb v. Maschner, 633 F.Supp. 351, 353 (D.Kan. 1986); Jackson, 846 F.2d at 817 ["Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."]. While Plaintiff obviously feels strongly about the course of treatment he should have received for his condition, he is not a doctor, and his lay opinion (or the lay opinions of his fellow inmates) that he should have received or be receiving additional or different treatment than the treatment he was or is being provided is not in and of itself sufficient to create a genuine issue of fact as to whether he is being denied proper medical care. See Scheckells v. Goord, 423 F.supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]). Therefore, no constitutional claim sufficient survive summary judgment has been presented with respect to Plaintiff's medical care.

Further, Plaintiff has also failed to provide any evidence to the Court to show that either of the named Defendants in this action had anything to do with his medical care. Rather, the

11



evidence shows that, every time Plaintiff had a medical need, he was seen by *medical personnel* and treated. Neither of the named Defendants is a doctor or works in the medical clinic, and would not therefore be subject to liability under the facts presented for the medical care Plaintiff received. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel].

Finally, even if the Court were to find that the evidence was sufficient to create an issue of fact as to whether either named Defendant was or has been *negligent* with respect to Plaintiff's medical care (a finding which the undersigned does not make), Plaintiff's medical claim would still be subject to dismissal, as negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); Ruefly v. Landon, 825 F.2d 792, 793-794 (4th Cir. 1987). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. Therefore, Plaintiff's medical claim should be dismissed.

### III.

The remainder of Plaintiff's claims could best be described as a hodge podge of various complaints about the overall conditions at the Detention Center. However, the allegations of Plaintiff's verified Complaint, as well as the factual statements in the affidavits from Plaintiff's fellow inmates, are presented in such a general and conclusory manner that they would normally be subject to dismissal. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993)



[Plaintiff's conclusory allegations insufficient to maintain claim]. The Court is not required to accept the Plaintiff's general and conclusory allegations in his verified Complaint, or in the affidavits he has submitted, that the conditions he complains of rise to the level of constitutional violations. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

It could also be argued that Plaintiff has failed to make any specific factual allegations to tie either of these two Defendants to the conditions complained of, although Plaintiff does argue in his brief opposing summary judgment that his grievances were directed to the Defendant Fox as Director of the Detention Center, but that Fox has ignored the conditions at the Center, while Saffore should be held responsible for the overcrowded conditions because she is in charge of classifications of inmates, and therefore is responsible for where they are housed. Plaintiff does also make specific, verified factual allegations concerning the conditions at the jail, including such specifics as the number of showers available for inmates, the conditions in the showers, and he has also submitted evidence to confirm his claim that three people are being housed in one man cells at the Detention Center.

While such conditions do not necessarily amount to constitutional violations; *cf.* Landfair v. Sheahan, 911 F.Supp. 323, 325-326 (N.D.Ill. 1995) [pretrial detainee who alleged that due to overcrowding, he was forced to sleep on floor, and contracted meningitis, failed to state a claim because he did not set forth specific facts showing that he actually had meningitis]; Hamm v.

13



DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) [the fact that pretrial detainee temporarily had to sleep on a mattress on the floor or on a table "is not necessarily a constitutional violation."]; Harris v. Fleming, 839 F.2d at 1235 [prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted]; Isaac v. Fairman, No. 92-3875, 1994 WL 63219, * 5-6 (N.D.Ill. 1994) [allegation that prisoner was provided only one uniform and denied adequate opportunity to wash did not state claim]; Defendants have provided no evidence to the Court to show exactly what the conditions at the jail are, whether inspections have been conducted and the findings of those inspections, or any other evidence concerning these other non-medical allegations raised by the Plaintiff in his Complaint. Further, Plaintiff has alleged a remedial injury as a result of these purported conditions, and the evidence presented to the Court does reflect that he suffered from staph infections. *Cf.* Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [finding that pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights *where he failed to allege remedial injury*].

While these allegations obviously have not been proven, they are sufficient to set forth a claim under § 1983 absent any evidence from the Defendants showing no constitutional violations have occurred. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991) [overcrowding combined with unsanitary conditions can be unconstitutional]; Delgado v. Cady, 576 F.Supp. 1446 (E.D.Wis. 1983) [prison overcrowding may result in constitutional violation under certain circumstances]; West v. Edwards, 439 F.Supp. 722 (D.S.C. 1977) [same]; Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994) [discussing claim based on general conditions of



confinement]; *cf.* Belcher v. Oliver, 898 F.2d 32, 34 (1990) ["the Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious...needs of the detainee"]. Since Defendants have provided no evidence to address any of these claims, summary judgment on these claims would not be appropriate or justified at this time.

Defendants' alternative argument that these remaining claims should be dismissed on the ground of qualified immunity is also without merit. Under the doctrine of qualified immunity, government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). However, as noted by the cited caselaw, it was certainly clearly established at the time of the filing of Plaintiff's complaint that an inmate's constitutional rights could be violated if government officials allowed him or her to be kept in unsanitary, dangerous, or otherwise unlawful conditions of confinement. Therefore, since Plaintiff's allegations, if true, may amount to violations of Plaintiff's constitutional rights, and no contrary evidence has been submitted addressing these claims, the Defendants are not entitled to dismissal as party Defendants on the grounds of qualified immunity. Toth v. City of Dothan, Ala., 953 F.Supp. 1502, 1508 (M.D.Ala. 1996); Clifton v. Horbin, No. 05-2472, 2006 WL 2727293 (D.Minn. Sept. 22, 2006) [adopting report and recommendation denying summary judgment on qualified immunity where material facts remain].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary

15



judgment with respect to Plaintiff's medical claims be **granted**, and that those claims be **dismissed.** It is further recommended that Plaintiff's claims concerning the other general conditions of his confinement, to include overcrowding and unsanitary conditions as well as the conditions of the jail showers (see verified Complaint) be **denied**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

March 27, 2007



16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

17

