IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC

2007 OCT -1  P 12: 52

Shane M. Morrison,                    )
                                      )
            Plaintiff,                )
                                      )          Civil Action No. 0:05-3394-SB-BM
v.                                    )
                                      )
Tom Fox, Director, Horry County       )              **ORDER**
Detention Center; Sue Saffore,        )
Captain, Horry County Detention       )
Center,                               )
                                      )
            Defendants.               )
_____)

This matter is before the Court upon the *pro se* Plaintiff's complaint, brought

pursuant to 42 U.S.C. § 1983. The record contains a report and recommendation ("R&R")

of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B).

A party may object, in writing, to an R&R within 10 days after being served with a copy of

that report. 28 U.S.C. § 636(b)(1). Both the Plaintiff and the Defendants filed timely

objections to the R&R.

## BACKGROUND

On December 12, 2005, Plaintiff Shane Morrison ("the Plaintiff" or "Morrison") filed

a verified complaint pursuant to 42 U.S.C. § 1983, alleging overcrowding and unsanitary

prison conditions and naming the Horry County Detention Center as the Defendant. Then,

on December 14, 2005, the Magistrate Judge issued an R&R, recommending that the

Court dismiss the Plaintiff's complaint without prejudice and without issuance and service

of process for failure to state a claim under 42 U.S.C. § 1983. The R&R specifically

informed the Plaintiff that he failed to name as a Defendant a party subject to suit because

the Horry County Detention Center is not a "person" under 42 U.S.C. § 1983.

In response to the Magistrate Judge's R&R, the Plaintiff filed a "motion for reconsideration," requesting to change the defendant "from Horry County Detention Center to Tom Fox, Director, and Sue Saffore, Captain." Because the Plaintiff is a *pro se* litigant, the Court recognized the Plaintiff's request and did not require him to file an additional motion to amend. Additionally, however, because the Plaintiff's allegations against the substituted Defendants were unclear from the Plaintiff's motion for reconsideration, the Court granted the Plaintiff an additional 30 days in which to file objections.

After receiving no written objections from the Plaintiff, the Magistrate Judge issued an Order on April 21, 2006, granting the Plaintiff an additional 30 days to file an amended complaint setting forth specific allegations against Defendants Fox and Saffore. On May 12, 2006, the Plaintiff filed an unverified amended complaint.[1]

In his initial verified complaint, the Plaintiff alleges overcrowding and unsanitary living conditions at the Horry County Detention Center. He states that he filed grievances concerning these claims but never received a response. With respect to the Plaintiff's claims of overcrowding, he asserts that three men are placed in one-man cells and that

---

[1] As the Magistrate Judge noted, the Plaintiff's initial complaint was verified; however, his amended complaint was not verified. In the Fourth Circuit, verified complaints by *pro se* litigants are considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. See Williams v. Griffin, 952 F.2d 820, 823 ( 4th Cir. 1991). Here, in light of the Plaintiff's *pro se* status, the Court considers any factual allegations set forth in the Plaintiff's unverified amended complaint that mirror the allegations set forth in his initial verified complaint as evidence for purposes of evaluating the Defendants' motion for summary judgment. However, any allegations made in the amended complaint that were not made in the initial complaint are not considered as evidence for purposes of evaluating the Defendants' motion for summary judgment.

2



eight to ten men are placed in four-man cells.  He states that some inmates must sleep on the dirty floors near the toilets, and they must use the bathroom in front of others.  With respect to his unsanitary conditions claim, the Plaintiff asserts that only 2 showers work for 140 inmates and that there are rusted-out grates and bars in all of the showers.  He states that he acquired a staph infection while incarcerated and that he got rid of it three times only to catch it again.  The Plaintiff asks for compensatory damages and to be cured of the diseases he has caught since arriving at the Horry County Detention Center.

In his unverified amended complaint, the Plaintiff states that his complaints against Defendants Fox and Saffore "are numerous" and "include unsafe conditions due to overcrowding and unsanitary conditions."  He again asserts that three men are contained in one-man cells and that men are required to sleep on the floors near the toilets.  He also asserts that there are over 130 inmates in a 46-inmate area, and he states that he was assaulted due to the overcrowding and was charged for his medical care after he was "forced" to receive treatment at an outside emergency room.  The Plaintiff claims that this charge is "ruining [his] credit."  The Plaintiff states that he has been subject to a staph infection, spider bite, or "Murph's disease" seven times or more and that he caught the disease three or four times from others who were placed in his one-man cell with him.  He asks, "With them knowing it is contagious (highly), and that I am [susceptible] to it, why do they keep putting people with this skin disease in the same cell with me?"

On January 24, 2007, the Defendants filed a motion for summary judgment.  Along with this motion, Defendant Saffore submitted an affidavit, and the Defendants also submitted the affidavit of Deborah Hipp, a Nurse Practitioner employed by the Horry County Detention Center, as well as her treatment notes for the Plaintiff.



In Defendant Saffore's affidavit, she attests that she has no personal recollection of the Plaintiff contracting a staph infection or getting into a fight during his incarceration. Saffore further attests that on September 24, 2005, the classification department received a medical reclassification form from Nurse Sandra Robertson; the form instructed the classification department to reclassify the Plaintiff into a medical cell in the B3 housing unit. Saffore attests that this reclassification was completed on September 25, 2005, by moving the Plaintiff into Cell 132 in the B3 housing unit.

Next, in Hipp's affidavit, she states that she is familiar with the Plaintiff's allegations in his complaint and offers testimony based on a review of the Plaintiff's medical records as well as her personal examinations of him during his incarceration. Hipp first states that the Plaintiff arrived at the detention center on July 24, 2005, at which time he received an inmate medical screen and no staph infection or other serious medical problem was noted. Hipp next attests that on September 17, 2005, the Plaintiff filled out a medical request form complaining of a spider bite. According to Hipp, on September 18, 2005, Nurse Amy Stack examined the Plaintiff and noted that he had a "small area of red raised-no drainage noted." Stack gave the Plaintiff betadine pads.

Subsequently, the Plaintiff filled out another medical request form, complaining of more spider bites. Per Hipp's request, the Plaintiff received an aerobic bacterial culture on September 23, 2005. Then, on September 24, 2005, Nurse Robertson saw the Plaintiff in the medical clinic and noticed "multiple reddened raised areas" on the Plaintiff's right lateral leg, knee, and inner aspects of the leg. Robertson also noted that he "had small red area to right groin," and she instructed him on good hand washing. Robertson examined the Plaintiff's right lateral thigh abscess and opened it with a needle to obtain a culture.



Robertson noted that a large amount of drainage was present and she notified Hipp of the drainage. Robertson also noted that the Plaintiff was to be reclassified to the B-3 Medical Cell, away from the general population of inmates.

Hipp states that she saw the Plaintiff in the medical clinic on September 24, 2005, and that she ordered that he be reclassified to the B-3 Medical Cell and that he be given daily wound care with right leg documentation. Hipp prescribed Cipro 500 mg, Ultram 50 mg, and Tylenol 500 mg, and she ordered that the Plaintiff be given a clean uniform and towel each day for five days and that a culture be obtained. Hipp then advised the Plaintiff of the need for good hand-washing and to avoid touching the infected areas. The Plaintiff was reclassified on September 24, 2005, and he received new mats, blankets, mat covers, uniforms, and towels.

Hipp attests that on September 25, 2005, Nurse R. Hassan saw the Plaintiff in the medical clinic and noted a large open wound on the right posterior thigh and several other small open wounds on the Plaintiff's interior right thigh with drainage from all of the wounds. Hassan cleaned and treated the areas and then placed the Plaintiff on sick call with monitoring due to the swelling noted. Hipp next attests that she saw the Plaintiff on September 26, 2005, and again noted an abscess on his leg. She noted that the Plaintiff was to take Ultram 50 mg and was to remain in the medical cell.

Overall, Hipp attests that the Plaintiff received appropriate treatment for his staph infection; she claims that medical personnel examined Morrison "quite often" and attended to his needs. In addition, Hipp attests that based on her personal treatment of the Plaintiff, as well as a review of his medical records, the staph infection "arose either from a spider bite or other common conditions within the Horry County Detention Center while house[d]

5



in the A-Pod, general population of the jail." Hipp states that "[i]t is relatively common for inmates to have staph infections as it is in hospitals and other areas with large populations of people inside a closed living space." (Hipp Aff. at 4.)

In addition to her testimony regarding the Plaintiff's staph infection, Hipp also states in her affidavit that the Plaintiff was involved in a fight with a fellow inmate on January 20, 2006. According to Hipp, medical personnel examined the Plaintiff after the incident and noticed a laceration over his right eye. Because the Plaintiff needed emergency medical care, he was transported to the Conway Medical Center where he underwent a CT scan of his head and facial area as well as his spine area, all of which returned negative. The doctor noted no fractures, and the Plaintiff returned to the Detention Center. Hipp attests that the Horry County Detention Center did not pay for the Plaintiff's emergency room visit because it is not required to do so for pre-trial detainees, who are responsible for their own medical treatment.

On February 6, 2007, the Plaintiff submitted a brief in opposition to the Defendants' motion for summary judgment in which he continues to complain about the overcrowding and unsanitary conditions of confinement. Additionally, the Plaintiff included a "pod roster" from July 17, 2006, showing three men assigned to each cell; the Plaintiff claims that each cell is only a one-man cell. The Plaintiff also attached a copy of an incident/infraction report from January 10, 2006, which discusses the altercation between him and another inmate. The report indicates that no officer saw the incident but that the Plaintiff was bleeding from a gash above his eye and was transported to the hospital for stitches. The report also indicates that the other inmate involved in the incident was charged with assaulting the Plaintiff.



In addition, the Plaintiff submitted the affidavit of a fellow inmate, Dupree Evans, who asserts that he has knowledge that the Plaintiff was housed in a medically-segregated cell after his ailment was cured, and that others were placed into his cell causing him to be reinfected. Evans also complains about the "excessive overcrowding," stating that three inmates are placed in one-man cells and that 125 to 146 inmates are housed in a pod designed to house only 48.

The Plaintiff also included an affidavit from fellow inmate Randi J. Gaunt; Gaunt attests to the unsanitary and overcrowded conditions of the detention center and corroborates the Plaintiff's allegations that he was not reclassified appropriately. The Plaintiff also submitted a list of supporting witnesses, whom he apparently intends to call to testify on his behalf at trial, as well as a copy of the medical reclassification form dated September 24, 2005.

On March 27, 2007, the Magistrate Judge issued an R&R, recommending that the Court grant the Defendants' motion for summary judgment with respect to the Plaintiff's medical claims; however, the Magistrate Judge stated that it would be inappropriate to grant summary judgment on the Plaintiff's other "hodge podge" of claims related to the conditions of confinement.[2] Both parties filed timely objections to the R&R, and the matter is now ripe for review.

---

[2] In the conclusion, the Magistrate Judge somewhat confusingly states that "[i]t is further recommended that Plaintiff's claims concerning the other general conditions of confinement, to include overcrowding and unsanitary conditions as well as the conditions of the jail showers be denied." (R&R at 16.) The Court believes that the Magistrate Judge intended to state that it is recommended that the Defendants' motion for summary judgment be denied with respect to the Plaintiff's claims concerning other general conditions of confinement, not that the Plaintiff's claims be denied.



## STANDARD OF REVIEW

### I.    Summary Judgment

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Celotex, 477 U.S. at 327.

### II.    The Magistrate Judge's R&R

This Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in



part, the recommendations contained in that R&R.  28 U.S.C. § 636 (b)(1).  Any written

objection must specifically identify the portions of the R&R to which the objection is made

and the basis for the objection.  Id.  After a review of the entire record, the R&R, and both

parties' objections, the Court declines to adopt the R&R in full and instead adopts it only

to the extent that it is consistent with this Order.

<u>DISCUSSION</u>

I.      **Exhaustion of Administrative Remedies**

In the R&R, the Magistrate Judge first addresses the Defendants' assertion that the

Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies.

See 42 U.S.C. § 1997e(a) (requiring the exhaustion of administrative remedies before

bringing suit under section 1983).  In his initial verified complaint, the Plaintiff states that

he filed two grievances in September and one in November of 2005; he attached a copy

of his November grievance to his initial verified complaint.  However, the Plaintiff states that

despite his repeated attempts to exhaust his remedies, his grievances went unanswered.

The Defendants argue in their motion for summary judgment that the Plaintiff never

allowed the grievance process to properly conclude and therefore, he failed to exhaust his

administrative remedies.  Nevertheless, the Defendants provide no evidence in the form

of affidavits or otherwise outlining the status of the Plaintiff's grievances.  See Jones v.

Bock, — U.S. —, 127 S. Ct. 910 (2007) (holding that failing to exhaust is an affirmative

defense under the PLRA, and inmates are not required to specially plead or demonstrate

exhaustion in their complaints); Anderson v. XYZ Correctional Health Services, Inc., 407

F.3d 674 (4th Cir. 2005) ("[T]he PLRA's exhaustion-of-remedies requirement does not



9

impose a heightened pleading obligation on an inmate.  Instead, an inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant.").  Here, because exhaustion is not a pleading requirement for the Plaintiff and because the Defendants failed to put forth any evidence regarding the status of the Plaintiff's filed grievances, the Magistrate Judge properly concluded that a genuine issue of fact exists as to whether the Plaintiff exhausted his administrative remedies.  Thus, the Court will proceed to address the Plaintiff's claims on the merits.

II.    **The Plaintiff's Claims**

In the R&R, the Magistrate Judge first evaluated the Plaintiff's medical claims (namely, his claims regarding the treatment he received for staph infections and for head trauma following the altercation with another inmate).   The Magistrate Judge then evaluated the Plaintiff's remaining claims, describing them as a "hodge podge of various complaints about the overall conditions at the Detention Center."  (R&R at 12.)  The Magistrate Judge recommended granting summary judgment as to the Plaintiff's medical claims and denying summary judgment as to the Plaintiff's other conditions of confinement claims.

A.    **Deliberate Indifference to Serious Medical Needs**

With respect to the Plaintiff's medical claims, the Magistrate Judge determined that the Plaintiff failed to present evidence sufficient to show that the named Defendants were deliberately indifferent to his serious medical needs.  See Estelle v. Gamble, 429 U.S. 97 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").



10

To prove a claim of deliberate indifference to a serious threat of physical harm under the Eighth Amendment,[3] a plaintiff must show that a defendant's "action or inaction [1] result[ed] in or creat[ed] a sufficiently serious risk of a deprivation that objectively results in denial of the 'minimal civilized measure of life's necessities' and [2] a 'sufficiently culpable state of mind.'" Winfield v. Bass, 106 F.3d 525, 531 (4th Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 831-34 & n. 2 (1994)) (emphasis added). "Deliberate indifference is a very high standard - a showing of mere negligence will not meet it." See Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). An officer is deliberately indifferent to a substantial risk of harm when that officer "knows of and disregards" the risk. Brennan, 511 U.S. at 837. To be liable under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.; see also Young v. City of Mount Rainer, 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care."). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. See, e.g., Russell v. Sheffer,

---

[3] The Plaintiff was a pre-trial detainee during the time period at issue, and therefore, his right to medical care is protected by the Fourteenth Amendment. Nevertheless, the governing standard is the same under either the Eighth or the Fourteenth Amendment. See, e.g., Lancaster v. Monroe County, Alabama, 116 F.3d 1419, 1425 n. 6 (11th Cir.1997) ("The minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs."); see also Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs.").



11

528 F.2d 318, 319 (4th Cir. 1975).

Here, the Defendants provided affidavits outlining the medical care given to the Plaintiff since his arrival at the detention center. The affidavits provide evidence that the Plaintiff was treated for his staph infections, removed from the general population, and prescribed medication. The affidavits also provide evidence that the Plaintiff was transported to the hospital for the treatment of a head injury after he was assaulted by another inmate. Indeed, the Plaintiff also submitted exhibits indicating that he was transferred to the medical clinic in September of 2005 and that he received medical care at the hospital. In the R&R, the Magistrate Judge states:

> Hence, it is not contested that Plaintiff has and is receiving medical care for his complaints; rather, Plaintiff is simply dissatisfied with the medical care he is receiving (or, with regard to the incident where he was sent to the hospital, who has to pay for that care.) However, while the provision of medical care is not discretionary, the type and amount of medical treatment to be provided is discretionary.

(R&R at 11.) In the Plaintiff's objections to the R&R, however, the Plaintiff states, "I do not contest that I received medical care for my complaints, and [I] am not dissatisfied with my medical care." (Pl.'s Obj. at 3.) Rather, the Plaintiff complains that he was forced to receive treatment (for head trauma) in the hospital that he did not want or need, and that the Defendants refused to pay for the treatment. He also complains that he was not removed from a medical cell after being cleared, causing him to become reinfected.

As an initial matter, the Court declines to address the Plaintiff's objection that he should not be responsible for the medical treatment he received at the hospital for head



trauma, as this is not a proper claim under 42 U.S.C. § 1983.[4]

Next, with respect to the Plaintiff's objection that he was forced to receive care (for head trauma) that he did not want or need, the Court finds this claim to be without merit. As the Magistrate Judge determined, mere disagreement between the Plaintiff of the seriousness of his medical needs and/or the course of his treatment does not in itself constitute deliberate indifference on the part of the medical personnel. See also Pabon v. Wright, 459 F.3d 241 (2d Cir. 2006) ("[A] prisoner's right to refuse medical treatment need not be honored if legitimate penological interests require the prisoner to be treated. If prison officials, including doctors, identify situations in which they reasonably believe that treatment is required, notwithstanding the prisoner's asserted right to refuse it, the right must give way."). The incident report provided to the Court by the Plaintiff indicates that after the altercation between the Plaintiff and the other inmate, the Plaintiff was "bleeding profusely from a gash above the eye," and the officers found him "covered in blood and signal a code red." The Plaintiff was told that all inmates with head trauma must be transported to the hospital, and the Court finds that legitimate penological interests support such a policy. In sum, the Plaintiff received medical care for his head trauma, and his allegations regarding his trip to the hospital fail to state a constitutional claim sufficient to survive summary judgment.

Likewise, to the extent that the Plaintiff objects to the actual medical treatment he received for his staph infections, the Court finds such a claim insufficient to withstand

---

[4] As the Magistrate Judge noted, because the Plaintiff was provided medical care for the head trauma, his dispute regarding who should pay for that care does not in and of itself raise a constitutional claim, as he was not denied care.



summary judgment, as the evidence in the record, including the affidavits submitted by the Defendants as well as the Plaintiff's own statements, demonstrates that the Plaintiff received sufficient medical care for his staph infections. In fact, the Plaintiff admits that he is not dissatisfied with the care he received; rather, he complains that Defendant Saffore failed to reclassify him upon recovery. He states:

> I also was not kept in a "medical clinic." I was kept in a medical cell, and that is where the problem lies. I was in medical numerous times and cleared from my medical condition and medical called classification and told them to remove me from medical cell. Then I was moved to the next cell over which was still medical. This happened three times. I was moved into B3-132, cleared, moved to B3-131, cleared, moved to B3-130. All of which are still medical cells and after being cleared was subject to "staph infection" again and again; and after being cleared because classification didn't move me from "medical cells," which are located in B3-pod. B3-129-132. The Defendant Sue Saffor[e] failed to move me from medical cells even though medical cleared me to be moved. Also I was subject to cont[r]acting "staph infection" over and over because classification continued to move others with "staph infection" into the cells without moving me. This caus[ed] me to become reinfected numerous times.

(Pl.'s Obj. at 2-3.)  Because the Court finds that this claim is related to the Plaintiff's conditions of imprisonment claims, the Court will address this claim in conjunction with those claims.

## B.    The Plaintiff's Conditions of Imprisonment Claims

In the R&R, the Magistrate Judge states that "[t]he remainder of Plaintiff's claims could best be described as a hodge podge of various complaints about the conditions at the Detention Center." (R&R at 12.)  These claims include the Plaintiff's complaints about the overcrowding and unsanitary conditions at the detention center.  In the R&R, the Magistrate Judge notes that the Plaintiff's claims are general and conclusory in nature and that ordinarily they would be subject to summary dismissal; however, because the



14

Defendants presented no evidence to the Court regarding the conditions of the detention center and because the Plaintiff alleged that his staph infections resulted from the overcrowding and unsanitary conditions, the Magistrate Judge concluded that the Plaintiff's allegations were sufficient to set forth a § 1983 claim.

In their objections to the Magistrate Judge's R&R, the Defendants argue that the Magistrate Judge erred in determining that the Plaintiff's general and conclusory allegations sufficiently relate his staph infections to the complained-of conditions of confinement. The Defendants assert that "the Plaintiff has provided no evidence by affidavit testimony or otherwise indicating that his staph infection was caused by the conditions of confinement." (Defs.'s Obj. at 2.) The Defendants further assert that "because the Plaintiff apparently attributes his injury to his alleged improper medical classification, an issue of medical treatment, he has merely alleged a 'hodge podge' of conditions of confinement that he feels are unsatisfactory without connecting those conditions to a significant injury." (Defs.' Obj. at 3.) The Court disagrees with the Defendants.

First, it is clear from a reading of the Plaintiff's first verified complaint (in conjunction with his amended unverified complaint) that he claims to have been reinfected with staph infection(s) due to the overcrowding at the detention center. He states that he contracted staph infections numerous times because other infected inmates were placed into a one-man cell with him after he recovered. In his response in opposition to the Defendants' motion for summary judgment, he states that inmates with MSRD or staph infection were placed in the same cell with him when he was not infected, and vice versa. The Plaintiff states that he filed grievances with Defendant Fox, but that Fox ignored his claims about



15

the conditions.  The Plaintiff states that he named Saffore as a Defendant because she is in charge of classification and kept him in a medical cell from September of 2005 until July of 2006.  He asserts that Saffore should have moved him from a medical cell when his ailments were cured or when another infected inmate was moved into the cell.  He states, "They do not move people from medical because of the overcrowdedness.  There is nowhere to move them so people are held with medically segregated inmates when they should be alone."  (Pl.'s Response at 5.)

Also, as previously set forth, the Plaintiff complains in his objections to the R&R that he was cleared of his medical condition but was not moved from a medical cell, resulting in his being repeatedly reinfected.  In addition to the Plaintiff's own statements, he submitted the affidavits of two fellow inmates, Evans and Gaunt.  Evans states in his affidavit that he has knowledge that the Plaintiff "was housed in medically segregated cells after his ailment [was] cured, and that others were placed into his cell with him causing him to be reinfected several times."  (Evans Aff. at 1.)  Similarly, Gaunt states in his affidavit that the Plaintiff was housed in several medical cells with other inmates who had acquired staph infections.  Gaunt also states that sometimes the officers let inmates with staph infections out into the general population and that these inmates are not supposed to shower, eat, or handle trays with the general population.

Based on the aforementioned, the Court finds that the Plaintiff did adequately relate his alleged injury (being reinfected with staph infections) to his claim that the detention center was overcrowded.[5]  And although this condition does not necessarily amount to a

---

[5]  The Court agrees with the Defendants, however, that the Plaintiff did not adequately relate his initial contraction of a staph infection or his alleged reinfection with staph



16

constitutional violation, the fact remains that the Defendants have failed to put forth any evidence regarding this claim. The Defendants did submit the affidavits of Saffore and Hipp; however, these affidavits do not address the Plaintiff's assertion that he remained in a medical cell when he should have been removed. The Plaintiff states that he recovered from his staph infections and that medical called classification to have him removed from a medical cell but that he was not removed due to overcrowding. The Defendants offer no evidence to refute the Plaintiff's claims that he was cleared by the medical clinic numerous times; they offer no evidence to refute the Plaintiff's claim that he was not removed from his medical cell due to overcrowding; they offer no evidence to refute the Plaintiff claim that he remained in a medical cell from September of 2005 until July of 2006. In fact, the medical records and affidavits submitted by the Defendants only address the Plaintiff's staph infections from September 17, 2005, until September 26, 2005, and his head injury in January 20, 2006. Thus, there is no mention of how long the Plaintiff remained in a medical cell and/or whether he became reinfected with staph infections, as he alleges.

In sum, the Plaintiff has put forth evidence to support his claim that he was reinfected with staph infections due to the Defendants' failure to reclassify him (allegedly due to overcrowding at the detention center), and the Defendants have not put forth any evidence addressing this claim. Ultimately, the Court must view the evidence in the light most favorable to the non-moving party. Here, the Court finds that it would be remiss to

---

infection(s) to his other claims regarding the unsanitary conditions at the detention center (the showers and sleeping arrangements, etc,. As such, the Court finds that the Defendant is entitled to summary judgment on these claims.



17

grant summary judgment on this claim in view of the current record. Therefore, the Court denies the Defendants' motion for summary judgment with respect to the Plaintiff's claim that he was repeatedly reinfected with staph infections as a result of the Defendants' failure to reclassify him from a medical cell after being cleared (allegedly due to overcrowding at the detention center).

## CONCLUSION

Based on the foregoing, the Court adopts the R&R only to the extent that it is consistent with this Order, and it is

ORDERED that the Defendants' motion for summary judgment is **granted in part and denied in part**. Specifically, the Defendants' motion is granted with respect to the Plaintiff's claims regarding his treatment at the hospital for his head injury; the Defendants' motion is granted with respect to the Plaintiff's claims regarding the unsanitary conditions at the detention center; however, the Defendants' motion is denied with respect to the Plaintiff's claim that he was repeatedly reinfected with staph infections due to the Defendants' failure to reclassify him out of a medical cell after being cleared (allegedly due to overcrowding at the detention center). Lastly, this matter is referred to a United States Magistrate Judge for the appointment of counsel to represent the Plaintiff in further proceedings.

IT IS SO ORDERED.

The Honorable Sol Blatt, Jr.
Senior United States District Judge

September **28**, 2007
Charleston, South Carolina



18